1  Ray K. Shahani, Esq. SBN 160,814
   Attorney at Law
2  Twin Oaks Office Plaza
   477 Ninth Avenue, Suite 112
3  San Mateo, California 94402-1854
   Telephone: (650) 348-1444
4  Facsimile: (650) 348-8655

5  Attorney for Plaintiff
   KIRK G. ESSLER, an individual and
6  dba THEJOYRIDER.COM

7
                 UNITED STATES DISTRICT COURT
8
               NORTHERN DISTRICT OF CALIFORNIA
9
   KIRK G. ESSLER, an individual and        Case No:
10 dba THEJOYRIDER.COM,

11              Plaintiff,                   COMPLAINT FOR
                                            PATENT, TRADEMARK, COPYRIGHT
12         vs.                               INFRINGEMENT, UNFAIR
                                            COMPETITION AND FALSE
13 CERUZZI CONCEPTS INC., a Georgia          ADVERTISING
   corporation, LOUIS CERUZZI, an indivdual,
14                                           [15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331,
                Defendants.                  1338, 1367, 1498]
15                                           [JURY TRIAL DEMANDED]

16

17

18

19

20

21

22

23

24

25

26

27

28

**First Claim**

1.     Plaintiff KIRK G. ESSLER, an Individual and dba THEJOYRIDER.COM ("ESSLER.") for its claims against defendants CERUZZI CONCEPTS INC., a dissolved Georgia corporation ("CCI") and LOUIS CERUZZI, an individual ("CERUZZI") allege the following:

**Jurisdiction and Venue**

2.     This Court has subject matter jurisdiction over this Claim pursuant to 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331, 1338, 1367, 1498 because this is an action which involves claims arising under the patent and copyright laws, the Lanham Act, as well as related state claims for unfair competition, deceptive trade practices and trademark dilution.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) and 1400 in that defendants, and each of therm, are subject to personal jurisdiction in this district and this is the district in which acts of patent infringement, copyright infringement, trademark infringement, unfair competition and false advertising were committed.

**The Parties**

4.     ESSLER is an individual who resides in Richmond, California and dba THEJOYRIDER.COM with its principal place of business in Richmond, California.

5.     Upon information and belief, defendant CCI is a dissolved Georgia corporation with a former principal place of business at 3219 Clairmont North NE in Atlanta, Georgia.

6.     Upon information and belief, Defendant CERUZZI resides in 3824 Valley Bluff Drive in Doraville, Georgia and is an owner of CCI Atlanta, Georgia..

**The Facts**

7.     In or about 1997, ESSLER introduced The JoyRider and The LowRider, a seat for adult entertainment, to the public at the Folsom Street Fair in San Francisco.

8.     After an extensive advertising and promotional campaign, ESSLER launched its website located at the url internet domain address WWW.THEJOYRIDER.COM during about 1998.

9.     ESSLER filed its own Application for Trademark Registration No. 103976 and

1   registered on or about June 30, 1998 with The State of California alleging September 28, 1997 as

2   both dates of first use of the mark THE JOYRIDER ever and in the State of California. **Exhibit**

3   **1.**

4        10.   ESSLER filed its own Application for Trademark Registration No. 104016 and

5   registered on or about July 15, 1998 with The State of California alleging September 28, 1997 as

6   both dates of first use of the mark THE LOWRIDER ever and in the State of California. **Exhibit**

7   **2.**

8        11.   On or about September 26, 1997 ESSLER filed its own Application for Patent

9   Serial No. 08/938,332 titled "Rim Chair" which issued Feb. 29, 2000 as U.S. Patent No.

10  6,030,039. **Exhibit 3.**

11       12.   ESSLER filed its own Application for Trademark Serial No. 76628287 (on

12  January 18, 2005 with The United States Patent and Trademark Office alleging September 28,

13  1997 as the date of first use of the mark JOYRIDER ever and November 8, 1997 as the date of

14  first use in interstate commerce. **Exhibit 4.**

15       13.   On January 6, 2005, ESSLER communicated with defendants by certified letter.

16       14.   CCI is administratively dissolved in the State of Georgia. **Exhibit 5.**

17                         **FIRST CAUSE OF ACTION**

18                         **(Patent Infringement)**

19       15.   ESSLER repeats and realleges Paragraphs 1 through 14 above, and incorporates

20  them herein by reference as if set forth in full.

21       16.   On February 29, 2000, United States Patent No. 6,030,039, was duly and legally

22  issued to inventor and Plaintiff, ESSLER. Said patent was issued for a device as more

23  extensively and precisely described in the attached patent.

24       17.   Plaintiff thereafter and at all times relevant hereto has been the exclusive owner

25  of said patent.

26       18.   Defendants, and each of them, have been and still is infringing this patent (1) by

27  introducing, demonstrating, using, making, marketing, and selling a device which embodies the

28  patented invention and (2) by actively inducing others to infringe said patent, all to plaintiff's

1    monetary damage in excess of $1,000,000.00. Defendants, and each of them, will continue to so

2    infringe unless enjoined by this court.

3         19.    Plaintiff has placed the required statutory notice on all of its products which it

4    has made, marketed, sold and used under said patent and has given written notice to defendants,

5    and each of them, of their said infringement.

6         20.    The infringement by defendants, and each of them, is willful, intentional and

7    with conscious and knowing disregard of plaintiff's patent rights such that plaintiff's is entitled

8    to its reasonable attorney fees in pursuing this action and to treble damages.

9                              **SECOND CAUSE OF ACTION**

10                              **(Trademark Infringement)**

11        21.    ESSLER repeats and realleges Paragraphs 1 through 20 above, and incorporates

12   them herein by reference as if set forth in full.

13        22.    The use of the mark JOYRIDER by the defendants collectively and individually

14   in the manner alleged herein is likely to cause confusion among all of those potentially or

15   actually utilizing the products of ESSLER.

16        23.    As a result of the acts of the defendants collectively and individually, as alleged

17   herein, the defendants have unlawfully misappropriated and infringed upon ESSLER's marks

18   JOYRIDER and LOWRIDER in violation of the law of California and the laws of the other

19   states wherein the products of ESSLER are or are potentially provided.

20        24.    As a proximate result of the aforesaid trademark infringement by the defendants

21   collectively and individually, ESSLER has been and continues to be, irreparably and

22   substantially harmed and injured. If the aforesaid infringement is permitted to continue, further

23   loss and damage and irreparable injury will be sustained by ESSLER and other will be

24   encouraged or induced to infringe upon ESSLER's marks JOYRIDER and LOWRIDER, and the

25   value of said trademarks will be destroyed, for which ESSLER cannot be adequately

26   compensated at law.

27        25.    The defendants collectively and individually have derived unlawful gains and

28   profits from their infringement of said trademarks, and ESSLER has thereby been caused loss

1   and damage. As a proximate result of the defendants' infringement of the marks JOYRIDER and

2   LOWRIDER, ESSLER has suffered injury to its business, good will, mission, reputation and

3   profits, all to its damage in a yet to be fully ascertained amount.

### THIRD CAUSE OF ACTION

### (Copyright Infringement)

6   26.    ESSLER repeats and realleges Paragraphs 1 through 25 above, and incorporates

7   them herein by reference as if set forth in full.

8   27.    Plaintiff is the owner of copyrighted brochures, website and publicity

9   information regarding his products.

10   28.    Defendants have copied significant and substantial portions of plaintiff's

11   copyrighted materials without authorization, permission, consent or approval of plaintiff.

12   29.    Plaintiff has complied in all respects with 17 U.S.C. §§ 101 et seq., and secured the

13   exclusive rights and privileges in and to the copyright of the above-referenced work. Plaintiff has

14   been and still is the sole proprietor of all rights, title, and interest in and to the copyright in his

15   respective work as referenced above.

16   30.    Defendants' conduct violates the exclusive rights belonging to plaintiff as owner of

17   the copyrights, including without limitation plaintiff's rights under 17 U.S.C. § 106.

18   31.    On information and belief, plaintiff alleges that, as a direct and proximate result of

19   their wrongful conduct, defendants have realized and continue to realize profits and other

20   benefits rightfully belonging to plaintiff. Accordingly, plaintiff seeks an award of damages

21   pursuant to 17 U.S.C. §§ 504 and 505.

22   32.    Defendants' infringing conduct has also caused and is causing substantial and

23   irreparable injury and damage to plaintiff in an amount not capable of determination, and, unless

24   restrained, will cause further irreparable injury, leaving the plaintiff with no adequate remedy at

25   law.

26   33.    On information and belief, defendants have willfully engaged in, and are willfully

27   and intentionally engaging in, the acts complained of with oppression, fraud, and malice, and in

28   conscious disregard of the rights of plaintiffs. Plaintiffs are, therefore, entitled to the maximum

1    statutory damages allowable and attorneys fees.

2        34.    As a consequence of this dispute between the parties as to the rights, title, and

3    interest in the copyrighted materials described above, and pursuant to the Federal Declaratory

4    Judgment Act, 28 U.S.C. §§ 2201 and 2202, plaintiffs also seek a resolution of this ongoing

5    controversy by a declaration of this Court as to the rights of the respective parties in this matter.

6                              **FOURTH CAUSE OF ACTION**

7                                **(Unfair Competition )**

8        35.    ESSLER repeats and realleges Paragraphs 1 through 34 above, and incorporates

9    them herein by reference as if set forth in full.

10       36.    The defendants, and each of them, conduct alleged above constitutes unlawful,

11   unfair or fraudulent business practices in violation of California Business & professions Code §§

12   17200 et seq.

13       37.    The Defendants, and each of them, have continuously engaged in unfair trade

14   practices and unfair competition against plaintiff to plaintiff's irreparable damage.

15                              **FIFTH CAUSE OF ACTION**

16                                **(False Advertising)**

17       38.    ESSLER repeats and realleges Paragraphs 1 through 37 above, and incorporates

18   them herein by reference as if set forth in full.

19       39.    The defendants, and each of them, conduct alleged above as well as the use of

20   the name Ceruzzi Concepts, Inc. constitutes a violation of the Lanham Act 15 USC Sections

21   1051 et seq.

22       40.    The Defendants, and each of them, have continuously engaged in false

23   advertising and deceptive trade practices against plaintiff to plaintiff's irreparable damage.

24                                    **PRAYER**

25   Wherefore plaintiff demands judgment as follows:

26       1.    The defendants, and each of them, be preliminarily and permanently enjoined

27   against infringement of said patent pursuant to 35 U.S.C. § 283.

28       2.    The defendants, and each of them, be preliminarily and permanently enjoined

1    against infringement of said trademarks.

2        3.      The defendants, and each of them, be preliminarily and permanently enjoined

3    against infringement of said copyrights.

4        4.      The defendants, and each of them, render an accounting for all profits from

5    sales of products which defendants, and each of them, received by infringing said patent.

6        5.      Ordering an injunction permanently enjoining each of the defendants

7    collectively and individually, their agents, directors, officers, servants, owners, shareholders and

8    employees, and all those in privity with the plaintiff and the named defendants from using the

9    trademarks JOYRIDER and LOWRIDER or any variant thereof such as PORTA RIM SEAT in

10   any manner, directly or indirectly, and from marketing, advertising, labeling, promoting,

11   exploiting, for audiology services or similar or related goods or services, in connection with the

12   trademarks JOYRIDER and LOWRIDER or any variant thereof, and from representing or

13   attempting to pass off defendants' goods and services as those of ESSLER and from engaging in

14   unfair competition against ESSLER and from using the identity of ESSLER in connection with

15   the sale or other priding of goods or services;

16       6.      Ordering an accounting of the gains and profits realized by the defendants

17   collectively and individually from the aforementioned wrongful acts;

18       7.      Requiring the defendants collectively and individually to cause to be destroyed

19   any material in their possession bearing a reproduction or colorable imitation of the trademarks

20   JOYRIDER and LOWRIDER or any variant thereof such as JIM RIDER, or any reference to

21   ESSLER or the JOYRIDER, including without limitation: signs, brochures, packages, wrappers,

22   advertisements, flyers, testimonials, labels, invoices, fax cover sheets, computer files, electronic

23   data, computers and computer servers, digital storage media, and any other printed material;

24       8.      Awarding ESSLER punitive damages from the defendants collectively and

25   individually to punish defendants for their willful and reckless indifference to the rights of other

26   exemplified by their willful appropriation of plaintiff's trademarks JOYRIDER and LOWRIDER

27   or any variant thereof and for the unfair competition practiced by defendants against plaintiff;

28       9.      Ordering defendants, under 15 U.S.C. § 1116, to file with the Court and serve

1   on plaintiff and its attorney(s) of record a report in writing under oath setting forth in detail the

2   manner and form in which defendants collectively and individually have complied with the terms

3   of the judgment, and injunction; and

4         10.      For damages sufficient to compensate plaintiff pursuant to 35 U.S.C. § 284,

5   but in excess of $1,000,000.00.

6         11.      For treble damages and for an award of special damages.

7         12.      For costs and reasonable attorney fees of the subject litigation and interest as

8   allowable by law, including but not limited to pursuant to 17 U.S.C. § 505.

9         13.      For such other and further relief as the court may deem just and proper.

10

11  ///

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

Respectfully submitted,

2

RAY K. SHAHANI
ATTORNEY AT LAW

3

Dated: February 4, 2005          By:  _____

4

Ray K. Shahani, Esq.
**Attorney for Plaintiff ESSLER**

5

6

### DEMAND FOR JURY TRIAL

7

Plaintiff KIRK G. ESSLER hereby demands a jury trial pursuant to Federal Rules f Civil

8

Procedure 38.

9

Dated: February 4, 2005          By:  _____

10

Ray K. Shahani, Esq.
**Attorney for Plaintiff ESSLER**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28





# State of California

## SECRETARY OF STATE

Trademark Reg. No. 103976      Class No. Int. 28

### CERTIFICATE OF REGISTRATION OF TRADEMARK

*I, BILL JONES,* Secretary of State of the State of California, hereby certify:

That in accordance with the application filed in this office the TRADEMARK described below has been duly registered in this office on behalf of:

**Name of Applicant:**    Kirk G. Essler
**Business Address:**    1536 Merced St., Richmond, CA 94804
**Date first used in California:**    September 28, 1997
**Date first used anywhere:**    September 28, 1997
**Description of Trademark:**    THE JOYRIDER
**Description of Goods on which the Trademark is used:**    A seat for erotic enjoyment with 18" high legs
**A copy, specimen, facsimile, counterpart or a reproduction of the mark is attached**
**Date of Registration:**    June 30, 1998
**Term of Registration Extends to and Includes:**    June 30, 2008



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this 6th day of July, 1998

BILL JONES
Secretary of State

     98 38011

**EXHIBIT**

2



# State of California

## SECRETARY OF STATE

Trademark Reg. No. 104016        Class No. Int. 28

## CERTIFICATE OF REGISTRATION OF TRADEMARK

*I, BILL JONES,* Secretary of State of the State of California, hereby certify:

That in accordance with the application filed in this office the TRADEMARK described below has been duly registered in this office on behalf of:

Name of Applicant:  Kirk G. Essler
Business Address:  1536 Merced Street  Richmond, CA 94804
Date first used in California:  September 28, 1997
Date first used anywhere:  September 28, 1997
Description of Trademark:  The LowRider
Description of Goods on which the Trademark is used:  A seat for erotic enjoyment with 12" high legs
A copy, specimen, facsimile, counterpart or a reproduction of the mark is attached
Date of Registration:  July 15, 1998
Term of Registration Extends to and Includes:  July 15, 2008



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this 20th day of July, 1998

*Bill Jones*

BILL JONES
Secretary of State

NP-24 A (Rev. 1-95)             98 38011



EXHIBIT

2

US006030039A

## United States Patent [19]

### Essler

[11] Patent Number: 6,030,039

[45] Date of Patent: *Feb. 29, 2000

[54] RIM CHAIR

[76] Inventor: Kirk Gregory Essler, 1536 Merced St., Richmond, Calif. 94804

[*] Notice: This patent issued on a continued prosecution application filed under 37 CFR 1.53(d), and is subject to the twenty year patent term provisions of 35 U.S.C. 154(a)(2).

[21] Appl. No.: 08/938,322

[22] Filed: Sep. 26, 1997

[51] Int. Cl.⁷ ............................................. A47C 9/00

[52] U.S. Cl. .......................... 297/273; 4/241; 128/845; 600/38

[58] Field of Search .......................... 297/273, 339, 297/DIG. 10, 274, 275, 276, 277, 281; 4/667, 241, 237; 5/929; 128/845; 600/38

[56] References Cited

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 362,969 | 5/1887 | Jacobus | 4/237 X |
| 656,763 | 8/1900 | Belisle | 297/276 X |
| 663,826 | 12/1900 | Baker | 4/237 X |
| 1,132,939 | 3/1915 | Jaubard | 4/237 |
| 1,256,548 | 2/1918 | Gannon | 297/275 |
| 1,557,263 | 10/1925 | Millen | 297/274 X |
| 1,698,344 | 1/1929 | Mott | 297/339 |
| 1,950,042 | 3/1934 | Upper | 297/274 X |
| 2,533,019 | 12/1950 | Ketcham | 297/275 X |
| 3,765,674 | 10/1973 | Siler | 297/273 X |
| 3,971,592 | 7/1976 | Farley | 297/448.2 |
| 4,825,855 | 5/1989 | Kundson, Jr. | 600/38 |
| 4,877,238 | 10/1989 | Barrett | 297/274 X |
| 4,907,303 | 3/1990 | Baird | 297/339 X |
| 4,924,531 | 5/1990 | Square | 297/DIG. 10 X |
| 4,941,708 | 7/1990 | Heffner | 297/DIG. 10 X |
| 5,027,446 | 7/1991 | Robertson | 297/DIG. 10 X |
| 5,226,439 | 7/1993 | O'Keefe et al. | 297/DIG. 10 X |
| 5,251,862 | 10/1993 | Raymond | 297/DIG. 10 X |
| 5,294,176 | 3/1994 | Asinovsky | 297/245 |
| 5,312,157 | 5/1994 | Logan, Jr. | 297/DIG. 10 X |
| 5,526,893 | 6/1996 | Higer | 297/273 X |
| 5,690,383 | 11/1997 | Meeker | 297/274 |
| 5,704,882 | 1/1998 | Coates et al. | 297/273 X |
| 5,737,780 | 4/1998 | Okita et al. | 4/667 |
| 5,782,243 | 7/1998 | Bisyak | 128/845 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 131731 | 11/1947 | Australia | 297/281 |
| 629927 | 10/1961 | Canada | 297/274 |
| 294172 | 4/1965 | Netherlands | 4/237 |
| 616403 | 9/1947 | United Kingdom | 4/237 |
| 1286716 | 8/1972 | United Kingdom | 297/274 |
| 2077114 | 12/1981 | United Kingdom | 297/274 |

Primary Examiner—Peter M. Cuomo
Assistant Examiner—David E. Allred
Attorney, Agent, or Firm—Victoria S. Kolakowski

[57]          ABSTRACT

The present invention therefore comprises a chair for supporting a person during sexual activity. The chair comprises a seat having an opening in the middle to permit access to a seated person's genitals or anus. The chair also comprises a rigid support frame for supporting the seat, and a flexible support system connected to the seat and the rigid support frame for suspending the seat from the rigid support frame. In a preferred embodiment of the present invention, the flexible support system comprises a plurality of springs connected to the rigid support frame and the seat.

In an alternative embodiment of the present invention, the chair comprises the seat and flexible support system, which connects the seat and to an existing rigid support structure.

10 Claims, 2 Drawing Sheets





*FIG._1*

Case 3:05-cv-00527-MEJ   Document 1   Filed 02/04/05   Page 17 of 26



*FIG._2*



*FIG._3*

6,030,039

1

## RIM CHAIR

### FIELD OF THE INVENTION

The present invention relates to devices to assist in sexual intercourse and other sexual activity, and more particularly to devices for positioning a person during sexual activity.

### BACKGROUND OF THE INVENTION

Sexual intercourse, and other types of sexual activity, are among the most basic actions performed by all higher life, but human beings are unique in intentionally engaging in sexual acts for pleasure, and not simply for procreation. In furtherance of such pleasure, people have long devised a range of apparatus to increase the pleasure of the sexual acts, to minimize discomfort and to increase the range of available sexual acts.

One of the more difficult problems encountered during sexual intercourse and other sexual activity is that of positioning the participants in positions that are comfortable and yet which permits, or preferably assists in, the performance of a variety of sexual acts by the participants, such as oral-genital sexual activity. In response to this problem, specially constructed beds, hammock-like slings and specially constructed chairs have long been constructed to permit the participants greater freedom in position during the sexual acts.

One such chair is commonly known as the "rim chair" or "rim stool". In the most common and easily constructed configuration, this is essentially an ordinary toilet seat with legs attached to the bottom to permit one partner to remain seated during sexual activity. The legs are positioned such that there is free space beneath the seat, and the seat is open in the middle and often in the front. Hence, the seat permits easy access to the genitals and anus of the seated partner.

Unfortunately, this configuration is very rigid. The legs must be firmly attached to the seat to ensure that the seat does not collapse during the sexual acts, thereby injuring the participants. The legs may even be attached to the floor to improve stability. However, this rigidity can create physical discomfort in the participants, and provides only limited freedom in positioning the parties.

Hence, it would be desirable to construct a rim chair which provides the needed structural support for the participants while allowing greater flexibility for motion of the seated partner.

### SUMMARY OF THE INVENTION

It is an object of this invention to provide an improved rim chair which has both the necessarily structural stability as well as some flexibility of motion of the seat.

The present invention therefore comprises a chair for supporting a person during sexual activity. The chair comprises a seat having an opening in the middle to permit access to a seated person's genitals or anus. The chair also comprises a rigid support frame for supporting the seat, and a flexible support system connected to the seat and the rigid support frame for suspending the seat from the rigid support frame. In a preferred embodiment of the present invention, the flexible support system comprises a plurality of springs connected to the rigid support frame and the seat.

In an alternative embodiment of the present invention, the chair comprises the seat and flexible support system, which connects to the seat and to an existing rigid support structure.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective view of a presently preferred embodiment of the present invention.

2

FIG. 2 is a top view of the embodiment of the present invention which is illustrated in FIG. 1.

FIG. 3 is a front view of the embodiment of the present invention which is illustrated in FIG. 1.

### DETAILED DESCRIPTION OF THE INVENTION

A presently preferred embodiment of the apparatus of the invention is shown in FIG. 1. The embodiment shown comprises three major components, with a seat 10 being attached to a rigid support frame 40 by means of a flexible support system 20. This attachment is such that a person seated on seat 10 is supported by rigid support frame 40, while flexible support system 20 permits a degree of movement of the seat as discussed below.

In the embodiment of the present invention illustrated in FIG. 1, seat 10 comprises an ordinary toilet seat. While any of a variety of toilet seats may be used in this fashion, the presently preferred embodiment is of the sort having an open front, such that it is more of a "C" or "U" shape, as opposed to a closed annular design. This configuration permits greater access to the genitals of the seated party. However, while presently preferred embodiments use a toilet seat, any of a variety of seats with an opening in the middle may be used.

Rigid support frame 40 of the illustrated embodiment may best be appreciated by reference to both FIGS. 1 and 2 together, which have a common numbering of their elements. All references to side of the illustrated embodiment refer to the direction when facing the front of the chair, as shown in FIGS. 1 and 3. On each of the left and right sides of rigid support frame 40, a pair of upright support bars 42 are connected to a lower side support bar 44 by means of a T-corner connector 52, with the middle opening of T-corner connectors 52 being attached to lower side support bar 44.

A foot 58 is attached to the remaining opening of each T-corner connector 52, to allow rigid support frame 40 to rest on the ground. A variety of feet 58 may be utilized, and may be equipped with a variety of means for stabilizing rigid support frame 40, including rubber elements, screw holes for screwing the feet into the floor, and other means which will be obvious to those skilled in the art.

Each upright support bar 42 is further connected to an upper side support bar 46 parallel to the respective lower side support bar 44 by a three-way corner connector 54 and an elbow connector 56. Hence, each of the left and right sides of rigid support frame 40 are rectangular in shape, with a pair of parallel upright support bars 42 and a parallel pair of lower side support bar 44 and upper side support bar 46.

Each of the left and right sides of rigid support frame 40 are connected together by a rear support bar 48 connected to the remaining connector on each of the two three-way corner connectors 54. It has been found that this connection provides sufficient structural support for rigid support frame 40 when the elements used are of a strong metal such as iron or steel. However, it will be obvious to those skilled in the art that a variety of configurations for rigid support frame 40 may be used to provide sufficient structural support, and that rigid support frame 40 may be constructed of a variety of materials, as long as the overall structure has sufficient strength to support the users during vigorous sexual activity.

As an example of such different configurations of rigid support frame 40 consistent with the present invention, it has been found that different heights of vertical support bars 42 may correspond to different preferred certain sexual acts. Thus, using vertical support bars 42 of roughly a foot in

6,030,039

3

height appears to be better suited for performing sexual intercourse, while using vertical support bars 42 of a greater height, such as one and a half to two feet, better facilitates oral-genital sexual activity. Further, different heights for vertical support bars 42 may be appropriate for differently sized individuals. Therefore, it will become obvious to those skilled in the art that a variety of heights of vertical support bars 42 may be used, depending upon the desired usage of the invention.

Flexible support structure 20 comprises four springs 22, with a pair of springs 22 connecting seat 10 with the right upper side support bar 46 and a pair of springs 22 connecting seat 10 with the left upper side support bar 46. Springs 22 are connected to upper side support bars 46 by ring fasteners 26 roughly concentric with upper side support bars 46.

The connection of springs 22 to seat 10 shown in the illustrated embodiment uses two different approaches. One spring 22 on each of the left and right sides is connected to a respective rear eyebolt 34. Rear eyebolts 34 each enter the seat 10 through a rear hole 12, which in the case of ordinary toilet seats is used for affixing the toilet seat to the toilet bowl. Rear eyebolts 34 are connected to each other by a rear eyebolt connector 36 (not shown). Rear eyebolt connector 36 is a hole with internal threading to permit rear eyebolts 34 to be screwed into rear eyebolt connector 36. In this manner both rear eyebolts 34 are connected to each other, with the eye portion of each extending from rear hole 12, with rear eyebolt connector 36 being disposed within rear hole 12 of seat 10.

The remaining two springs 22 are attached to seat 10 by means of front eyebolts 32, as best illustrated in FIG. 3. Front eyebolts 32 are disposed beneath seat 10, and are screwed into seat 10 through a pair of holes 14, one on each side of seat 10. Each front eyebolt 32 is then fixed at the top of seat 10 by a nut fastener 26. Nut fastener 26 and front eyebolt 32 are disposed as to make the top of seat 10 as flush as possible, although countersinking nut fasteners 26 may structurally undermine seat 10 and is therefore not presently used in the illustrated preferred embodiment of the present invention.

Also, although the front eyebolts 32 are illustrated as disposed perpendicular to seat 10, they may also be bent sideways to make them more closely parallel to springs 22. Further changes in orientation may be made consistent with the present invention, as will be obvious to those skilled in the art.

While the embodiment of the present invention illustrated in FIGS. 1–3 has a rigid support frame 40 in the form of a configuration of bars and joints, alternative support structures may be used to provide the necessary structural support for the users of the present invention consistent with the present invention.

Only one embodiment of a flexible support system 20 is illustrated; however, a variety of configurations will be obvious to those skilled in the art. For example, other flexible, elastic elements may be used in place of springs. Any flexible support elements may be used as long as it is strong enough to support the user during vigorous sexual activity, while being flexible enough to permit the seat to be displaced into a variety of positions. Also, alternative meth-

4

ods of attaching flexible support system 20 to seat 10 may be used consistent with the present invention, as will be obvious to those skilled in the art.

While the example illustrated above is the presently preferred embodiment of the present invention, various modifications will become obvious to those skilled in the art from the foregoing description and accompanying drawings. Accordingly, the present invention is to be limited solely to the scope of the following claims.

What is claimed is:

1. A chair for supporting a person during sexual intercourse comprising:

   a rigid seat consisting of a single substantially flat plate having a front section and a middle section, said substantially flat plate having an opening therethrough in said middle section;

   a rigid support frame supporting said rigid seat; and

   a flexible support system connected to said rigid seat and to said rigid support frame solely suspending said rigid seat from said rigid support frame, said flexible support system consisting of a plurality of elastic elements.

2. The chair of claim 1 wherein said opening in said middle section of said rigid seat extends to become an opening in and through said front section of said rigid seat.

3. The chair of claim 1 wherein said rigid seat comprises a toilet seat.

4. The chair of claim 1 wherein said rigid support frame further comprises a plurality of feet having screw holes for screwing said feet into the floor.

5. The chair of claim 1 wherein said rigid support frame further comprises a plurality of feet having rubber elements for stabilizing said rigid support frame on the ground.

6. A seat suspended from a rigid support structure comprising:

   a rigid seat comprising a toilet seat; and

   a flexible support system connected to said rigid seat solely suspending said rigid seat from the rigid support structure, said flexible support system consisting of a plurality of elastic elements.

7. A chair for supporting a person during sexual intercourse consisting of:

   a rigid seat comprising a toilet seat;

   a rigid support frame supporting said rigid seat; and

   a flexible support system connected to said rigid seat and to said rigid support frame said flexible support system solely suspending said rigid seat from said rigid support frame, said flexible support system consisting of a plurality of elastic elements.

8. The chair of claim 7 wherein said toilet seat comprises a front section and a middle section, and wherein said middle section has an opening extending to become an opening in and through said front section of said rigid seat.

9. The chair of claim 7 wherein said rigid support frame further comprises a plurality of feet having screw holes for screwing said feet into the floor.

10. The chair of claim 7 wherein said rigid support frame further comprises a plurality of feet having rubber elements for stabilizing said rigid support frame on the ground.

* * * * *



**Thank you for your request. Here are the latest results from the <u>TARR web server.</u>**

**This page was generated by the TARR system on** 2005-02-03 16:46:52 ET

**Serial Number:** 76628287

**Registration Number:** (NOT AVAILABLE)

**Mark**

# JOYRIDER

**(words only):** JOYRIDER

**Standard Character claim:** No

**Current Status:** Newly filed application, not yet assigned to an examining attorney.

**Date of Status:** 2005-01-26

**Filing Date:** 2005-01-19

**Transformed into a National Application:** No

**Registration Date:** (DATE NOT AVAILABLE)

**Register:** Principal

**Law Office Assigned:** (NOT AVAILABLE)

**If you are the applicant or applicant's attorney and have questions about this**

**file, please contact the Trademark Assistance Center at
TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 011 -Initial Review/Serialization Branch(Mailroom)

**Date In Location:** 2005-01-26

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. ESSLER, KIRK G.

**Address:**
ESSLER, KIRK G.
1565 Santa Clara
Richmond, CA 94804
United States
**Legal Entity Type:** Individual
**Country of Citizenship:** Not Provided

## GOODS AND/OR SERVICES

**International Class:** 020
Funiture for adult entertainment
**First Use Date:** 1997-09-28
**First Use in Commerce Date:** 1997-11-08

**Basis:** 1(a)

## ADDITIONAL INFORMATION

(NOT AVAILABLE)

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

## PROSECUTION HISTORY

2005-02-01 - New Application Entered In Tram

## CORRESPONDENCE INFORMATION

**Correspondent**
Ray K. Shahani (Attorney of record)

RAY K. SHAHANI
TWIN OAKS OFFICE PLAZA
477 NINTH AVE. SUITE 112
SAN MATEO, CALIFORNIA 94402-1854

**Phone Number:** (650) 348-1444
**Fax Number:** (650) 348-8655

EXHIBIT

5



SECRETARY OF STATE
*Cathy Cox*
. . . *advancing the e-government revolution*

▸ HOME  ▸ CONTACT  ▸ SEARCH
▸ ARCHIVES
▸ CORPORATIONS
▸ ELECTIONS
▸ PROFESSIONAL LICENSURE
▸ SECURITIES
▸ STATE CAPITOL

## Search Results

Information current as of 1/29/2005

Records 1 - 1 of 1 Total Records Found    *Click here for an explanation of terms*

---

**CERUZZI CONCEPTS, INC.** (DOMESTIC PROFIT)    *Officers*

**3219 CLAIRMONT NORTH NE**
**ATLANTA, GA 30329**

| Control # | Status | | Filing Date | Last AR Paid | Jurisdiction |
|-----------|--------|---|-------------|--------------|--------------|
| K830901 | ADMINISTRATIVELY DISSOLVED | | 08/20/1998 | 03/31/2000 | GEORGIA |

| Registered Agent | Agent Address | | Agent County |
|------------------|---------------|---|--------------|
| THOMAS R. DEVANEY | #2800, 1201 PEACHTREE ST. | ATLANTA, GA 30303 | FULTON |

---

New Search



▸HOME  ▸CONTACT  ▸SEARCH
▸ARCHIVES
▸CORPORATIONS
▸ELECTIONS
▸PROFESSIONAL LICENSURE
▸SECURITIES
▸STATE CAPITOL

## Search Results

### CERUZZI CONCEPTS, INC.
### Corporate Officers

| Title | Name | Address |
|---|---|---|
| CHIEF EXECUTIVE OFFICER | LOUIS CERUZZI | 3219 CLAIRMONT NORTH ATL, GEORGIA 30329 |
| CHIEF FINANCIAL OFFICER | LOUIS CERUZZI | 3219 CLAIRMONT NORTH ATL, GEORGIA 30329 |
| SECRETARY | LOUIS CERUZZI | 3219 CLAIRMONT NORTH ATL, GEORGIA 30329 |

2/2/2005 2:37 PM